Judge Pooler is present with us by video. Good morning. Good morning, Judge Jacobs. Yes, and who's this? I'm sorry. This is Judge Jacobs. Oh, oh, yes. Good morning, Your Honor, and the panel. Good morning. Now, I haven't called your case yet, so. Oh, I'm sorry. But I wish you a good morning as well. The first case is Williams v. Romarm, S.A. So we'll hear argument now. Mr. Wemhoff, you're on the phone, right? Yes, that's correct. And you've reserved three minutes for rebuttal. Yes, I did. So set your clock. Seven minutes. We'll hear you now. Okay, basically, this case is really a quintessential case, an example of the commercial activity exception to the Foreign Sovereign Immunity Act. Under both basically to defeat sovereign immunity on the part of Romarm, who's an instrumentality of the Romanian government. And the facts are clear that under both Clause 1 and Clause 3 of the Foreign Sovereign Immunity Act, Section 1605A2, they basically show that there is a subject matter jurisdiction in this case. You did not argue both subsections in the district? Well, the case came up on personal jurisdiction when I was transferred from the District of Maryland. And I argued, basically argued general as well as specific jurisdiction, personal jurisdiction to the district court. And we went over and we argued, or at least I argued, the different phases of the subject matter jurisdiction. And also we had filed in our amended complaint to the District of Maryland, which was then transferred to the District of Vermont. We filed under several paragraphs of dealing with the import and the export transactions that take place between Romarm and the Vermont Century Arms International, which would satisfy Clause 1 of the subject matter jurisdiction. And also this court has said previously in Brasborough that the personal jurisdiction and the subject matter jurisdiction are intricately intertwined. And we think we have grounds for that argument. Under the third clause, you need to show that the effect was direct with no intervening cause. Why wouldn't an anonymous berserk gunman be an intervening cause? Could you just repeat that, Your Honor, under the third clause, the direct effect clause? Yeah, to establish that the effect is direct, you need to show that there was no intervening cause. Exactly. And we do show that. But the thing is, how can it be no intervening cause if the gun was used by a maniac, an anonymous maniac? Why isn't he or she an intervening cause? Well, because that's after the direct effect has already taken place. The direct effect is on the United States. It's Romarm's activity in selling the weapon to the United States is where the intervening causes would wipe out the direct effect and make it indirect. It's already direct by the time the weapon is in the United States. So the act of importation of the gun from wherever to Vermont is the direct effect? Yes. Absolutely. What injury did you suffer because of the importation alone? Well, the claim is based on a violation of a statute. The statute is the strict liability statute in the District of Columbia. In other words, the weapon that came into the country and was directly affected under Clause 3. I'll try again. What injury did you suffer from the fact of importation alone? Well, the injury, the claims, came after the importation. Exactly. After the intervening cause, right? Right. After the direct effect had already taken place. Our position is that the direct effect, once the weapon is in the country, it's subject to the laws of this country. And it comes in through DATFE. The weapons are modified for civilian use. And then they're subject to the laws of any state, just like any domestic weapon manufacturer would be in the United States if they could be sued. They're all subject to the same law. Romarm, and also, too, the locus for the wrongful death and bodily injury, of course, is in the United States. And the arguments that were being made by Romarm, and the decision that came down with the trial court, had to do with cases where there were intervening acts that were taking place outside of the United States in some cases. And in other cases where the injury, the locus of the injuries were taking place outside of the United States, and the plaintiffs were suing within the United States, and they had no jurisdiction to do that under the direct effect clause of the clause 3. The... You've reserved three minutes of rebuttal. So we'll hear the other side now, and we will return to Virginia in a short while. Okay. Appreciate it. Good morning, Your Honors. May it please the Court, my name is Jeffrey Malsh. I represent Defendant Eppley Romarm, S.A. This is now the seventh court that this case has been before, and this should, hopefully, is the fifth court that has dismissed this case. It hasn't stayed long in any of the other cases. Well, it depends on your definition of long, but every initial motion has been granted in terms of Rule 6. I think we have to keep in mind that this case arises out of a criminal shooting, the criminal misuse of a product that is alleged to be non-defective. There's no claim in this case that the product had a defect. There's no claim that Romarm acted negligently. There's no claim in this case that Romarm made any type of misrepresentation. In every case... It would have been better if it had been defective and not gone off. For the plaintiff, that's for sure, Your Honor. But unfortunately, it operated as it was designed, it operated as it was manufactured, and unfortunately, someone used it, transported it illegally into the District of Columbia and then used it illegally to injure and kill the plaintiffs in this case, among others, which is a tragic event. But again, Romarm is a manufacturer of firearms, small arms, in Romania. It did not actually import the gun into the United States. Century Arms, one of its contractors, bought the products in Romania, imported them into the United States. Century, which was perfectly legal under every law of the United States and of Romania. Century then distributed that product to a distributor in Ohio. Again, perfectly legal, nothing negligent about it in the pleadings and in fact. That gun was then sold to a dealer in Maryland. Again, perfectly legal, nothing negligent, no claims of any wrongdoing.  And again, doing all the required paperwork, following all the required laws. The unknown part of this case is how that gun made it from that end user into D.C. to commit the crime. And again, those are the intervening acts that break the chain here for plaintiffs to bring this case against Romarm under the FSIA. You weren't claiming any benefit from the Protection of Lawful Commerce in Arms Act. Your adversary asked and filed a letter and it stands to reason that your adversary is right on that point. I agree with him that under Alito, which is the Ninth Circuit case, that since Romarm is not a licensee, they wouldn't be entitled to the protections. Isn't that the wording in the statute? It is. However, plaintiff tries to make an argument in his case that there's some sort of agency relationship between Century and Romarm to bring Romarm before the jurisdiction of this court. I would argue that if the court were to find that there was some sort of agency or some sort of relationship. It would be an illimitable principle. Yeah, and there may be, you know, I don't think they can have it one way and not have it the other. So there may be an argument to be made. We haven't made that yet. But there may be an argument to be made that if Century has an FFL and is a licensee and entitled to the protection of the PLCA, then Romarm might be able to, you know, ride their backs on that issue. Technically, though, they're not a licensee and the PLCA is limited to licensees. I agree. The direct effect clause, well, first of all, the Clause 1 is waived, Your Honor. We take the position that, and Judge Reese in the District of Vermont, in her opinion, denying plaintiff's motion for re-argument or re-argument to bring that up, she denied it. So Judge Reese was clearly of the opinion that that was not before her when we briefed and argued this motion originally. The Clause 3 of the commercial activity exception is very narrow in terms of its interpretation of a direct effect. It's much narrower than a traditional common law analysis of intervening cause. I would take the position that this case, we would have a very strong position to make a motion on an intervening cause just on a straight negligence case here with the intervening act. But clearly under the much more narrow definition of that causal link contained in the direct effect clause, it seems clear to me that there's no way that there can be a direct effect between the manufacture of the gun by Romarm and the injury sustained by the plaintiffs in this case. Beyond that, even if you were to get beyond the direct effect segment, there's also the based upon clause that they also have to meet. So even if there is a direct effect, which we don't believe there is, you must find that the act is what the claim is based upon. And that is, the courts have said that you have to look at the gravamen of the case. And the gravamen of this case, which I think Judge Newman articulated, is the criminal shooting. It's not the manufacture. It's not the importation. The gravamen of the case is a criminal shooting. Without that criminal shooting, there is no case because there's no injury. Beyond the FSIA, there are a multitude of grounds to dismiss this case. Each ground has been brought up before every court. The first two courts to hear this case down in the District of Columbia and the District of Maryland relied upon personal jurisdiction analyses to dismiss. The judge in Vermont relied upon the FSIA. But there are still personal jurisdiction issues in Vermont. There's a venue issue in Vermont, which is intrinsically tied to the personal jurisdiction analysis. This complaint was never served upon Romarm. Mr. Wemhoff, plaintiff's counsel, effected service by sending counsel for Romarm in the D.C. cases, which had been dismissed, a letter saying, please find and close the complaint. That's the full extent of the service of this case. Did the district court rule on the adequacy of service, or did any of the other 25 courts rule on that? No court has ruled on the adequacy of service. It's been addressed during argument, but there's been no ruling. Statute of limitations. The claim that was brought in D.C. On the other hand, you're here, so. On the other hand. That's an issue, right? In terms of what, Your Honor? I'm sorry. Personal service. We're here because we removed without proper service, which we're permitted to do to try to get the case dismissed.  We never signed any type of agreement. I agree, Your Honor. If he had asked us to accept service and we had agreed, it would not have been an issue. That never occurred. Statute of limitations. The case, when the case was dismissed by the District of Columbia Court and was eventually refiled in the state court in Maryland, it was beyond the three-year statute of limitations for any of these claims, which is the largest statute of limitations for any of these claims. The saving statute in Maryland does not help here, because the saving statute in Maryland specifically says in the text that if a case is dismissed by the district court, a federal district court, you have 30 days to refile in the state court in Maryland. The complaint wasn't filed in the state court in Maryland until more than 19 months after the district court of D.C. dismissed the case. Finally, I think the most interesting part of the case, which the court never really, no court has gotten into, although Judge Reese, I think, touched on it a little bit during argument, is the Commerce Clause and Due Process Clause, which we brought up, finding that we feel finds that the Strict Liability Act in the District of Columbia is unconstitutional. I'm happy to discuss that with you, but it's clearly, I think, under gore. The idea that Romarm can be punished through a financial sanction for legal activity in Romania, legal activity in Vermont, legal activity in Ohio, and legal activity in Maryland is unconstitutional. Beyond that, if you look at the legislative text of the Strict Liability Act, and even Plaintiff's Brief in this case, the idea of the Strict Liability Act is to affect a change of conduct in other parts of the country. They want to make these guns illegal in every other part of the country, and the District of Columbia is certainly allowed to do that, and they have done that, but they're not allowed under the Constitution to tell Vermont what to do, to tell Ohio what to do, to tell any of the other 50 states what to do with respect to whether they make these types of firearms illegal or legal. The vast majority of states in this country, these firearms are perfectly legal. There's a small segment of the states that do have made them illegal, but none of those states other than D.C. that make these guns illegal go that extra step and try to penalize and punish and change conduct of Romarm or any other manufacturer beyond the territorial limits of the district. Unless you have any other questions, I don't have anything to add. Thank you. Thank you. Mr. Wimhoff, we'll now hear from you. Well, none of those issues, the latter issues, were ever raised. They may have been raised, but they were never answered in the other courts. What we're dealing here, when the title was changed between Romarm and Century over in Romania, that has been found by the courts not to have made any difference as far as the importation of the weapon into the country. And we're talking in this case about civil liability, not criminal liability. And the civil liability is based on what a particular state or district of Columbia decides to do to ban assault weapons. And that's what it's done in this case. And their weapon wound up in the District of Columbia. It doesn't matter how it got there. It wound up there, and it was discharged in the District of Columbia, and it killed and wounded several people. And that's all that counts in this case as far as – and that would go to the proof, actually, because the subject matter of jurisdiction has nothing to do with the intervening events that occur in the United States. But suppose hypothetically the District of Columbia had passed the same statute imposing strict liability for injuries inflicted by a baseball bat, and a berserk person took a baseball bat and beat people over the head with it. You said it was if they had passed a law stating what? The same law imposing strict liability for injuries caused by a baseball bat. I'm not hearing the last part of that. A baseball bat, or let's say a kitchen knife, or a rope. I mean, I suppose they could pass that law. But the point of that is that – I mean, it may be a bit frivolous. I'm not sure. I mean, were baseball bats – No, the question that's presented in this case is whether a foreign manufacturer of rope or baseball bats or knives would have committed a wrong that overcomes the Foreign Civil Immunities Act just by manufacturing it and exporting it to the United States. Well, sure, if they're doing business in this country, they must abide by the laws. I mean, even Romarm modifies its weapons so they can come into the country. They follow what BATF tells them to do. And when they come in here, they're not adherent to the laws of this country, to the laws of any state. And the law of the District of Columbia is quite clear. And if a weapon winds up in the District of Columbia, it's an assault weapon, a semi-automatic weapon, then there's civil liability. That's all there is to it. It doesn't matter how it got there. Thank you. Thank you both. We will reserve decision.